Miller, J.,
delivered the opinion of the court:
Plaintiff in error, who was also plaintiff below, brought his suit in the Court of Claims to recover a.balance which he claimed to be due to him on a contract to “furnish all the material, and make 221,000 cubic yards of embankment at Memphis.”
1. Among the facts found by the court it is stated that “the officers of government interfered with claimant in the execution of his work, compelling him to dump loose earth where it was exposed to the direct current of the river, and that they also used the embankment as a *452 roadway to the loss and injury of the claimant; but that all of such acts, of which there was sufficient evidence occurred subsequent to the 15th day of July, 1847, and when claimant was in default in not having performed his said agreement, and completed said embankment.” And they, declare the law applicable to this state of facts to be, “that the claimant was not entitled to recover for the interference of defendants or their officers subsequent to the 15th of July, 1847, the time when the work under his contract was to have been completed by the terms of this agreement.”
We are of opinion that this ruling was erroneous. The court seems to have placed this right of the agents of the government to use the embankment as a roadway, and to compel him to dump loose earth into the current by which it, was carried away, both of which are found to be to his loss and injury, upon the simple fact that those injuries were inflicted after the day at which his contract should have been completed. What relation there is between his failure to do all the work by a certain day and the claim of the government to subject him to these losses is not pointed out by the court, nor is it perceived by us.
The contract declares no penalty for not completing the work by the 15th July. It does not even authorize the government to forfeit the contract or to terminate it. The utmost that can be claimed for this failure is such damages as it may have sustained because the work was not finished in time. For this the plaintiff had given a bond with sureties. But if the government permitted him to go on in the effort to complete the contract, it surely had acquired no right to compel him to do it in a manner which necessarily involved him in great loss, and to use the embankment as a roadway, to his further injury.
2. The court finds that there was waste and shrinkage of the embankment while building, and a natural settling of the batture on which the embankment was built, and that the loss occasioned thereby necessarily was borne by the claimant under the system of measurement adopted. And they find, as matter of law, that the contract being entire and not severable, claimant could only recover for embankment completed, and that, as a necessary consequence, all losses by settling and shrinkage, and the action of the current, were to he borne by the claimant.
We take it for granted that the word “settling ” in this finding of the law is used for the settling of the batture. If this be so we think the court erred in this matter also. It must be evident that if the foundation on which the embankment was built had settled lower *453 while the building was going on, that the embankment which supplied the place of this settling was there, and had become the property of the government. If the system of measurement did not enable the engineers to compute this accurately they should have done it approximately, or adopted some other system. It is clear that for the embankment built by him and remaining he should be paid; and if the quantity necessary to be built had increased by this settling, it was the loss of the government, which had agreed to pay by the cubic yard, and not by a certain sum for the job in the aggregate.
3. A more difficult question is presented in reference to the question of loss by the action of the current, and the natural waste and shrinkage of the embankment while it was in p.ocess of completion.
It is certainly true that if this embankment had been built on dry land the contract is of that nature that these losses would fall on claimant, and the custom of measurement found by the court probably was founded on such work.
But we do not feel so clear that in a contract like this, in which no place is mentioned for its precise location, and in regard to which the contract obliges the party to do the work “in such manner and at such places as shall be directed by the said engineer or other authorized agent,” the government is only bound to pay for what earth remains visible, and capable of being triangulated after the work- is finished. If, for instance, the engineer had ordered plaintiff to commence in the middle of the river, and had caused him to dump the -whole 221,000 yards in the midst of the current, where it could neither be seen nor measured, we are of opinion that the quantity of dirt placed there should be ascertained by some other mode, and paid for.
As the contract is silent as to the place where the work was to be done, as there are no facts found concerning the previous negotiations as to location or character of work required, we have not sufficient means of determining whether the application of the law to this point by the court was correct or not.
We must, therefore, dismiss this, the most important branch of the case, with the foregoing remarks, and as the judgment of the Court of Claims must be reversed for the errors already mentioned, the court may on a new trial find differently, or may find such acts as will enable us to determine the law of the case if it shall become necessary.
The judgment of the Court of Claims is reversed, and the case remanded for further proceedings in conformity with this opinion.